860 So.2d 225 (2003)
STATE of Louisiana
v.
Raymond E. MELANCON.
No. 03-KA-514.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 2003.
*226 Paul D. Connick, District Attorney District, Andrea F. Long, Terry Boudreaux, Bradley R. Burget, Assistant District Attorneys, Gretna, LA, for Appellee.
Holli Herrle Castillo, Marrero, LA, for Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
*227 MARION F. EDWARDS, Judge.
Defendant appeals his conviction for possession with intent to distribute cocaine. For the following reasons, defendant's conviction is affirmed.
On December 4, 2001, the Jefferson Parish District Attorney's Office filed a bill of information charging defendant, Raymond Melancon, with possession with intent to distribute cocaine, a violation of LSA-R.S. 40:967(A). Melancon was arraigned on December 27, 2001, and entered a plea of not guilty.
On May 7, 2002, the trial court heard and denied a defense motion to suppress the evidence.[1] Trial commenced that day. After a jury was selected and sworn, Melancon expressed his intention to withdraw his plea of not guilty and enter a guilty plea. The trial judge questioned Melancon with regard to his background, age, education, and general competency. The judge further instructed Melancon as to the nature of the offense to which he was pleading guilty, and the sentencing range to which he would be exposed.
The court advised Melancon of his right to trial by jury and confrontation, and his privilege against self-incrimination.[2] Melancon indicated he understood those rights, and that he wished to waive them and enter a guilty plea. Melancon and his attorney completed a waiver of rights/guilty plea form. The trial court accepted Melancon's plea as knowing and voluntary. As part of the plea bargain, the State agreed to refrain from filing a habitual offender bill.
The judge sentenced Melancon to eight years at hard labor, the first two years of which would be served without the benefit of parole, probation or suspension of sentence. The judge directed that the sentence be served concurrently with any other sentence defendant was serving. Melancon orally noticed his intention to appeal the trial court's denial of his motion to suppress under State v. Crosby.[3]
Facts surrounding the charged offense were adduced at the hearing on Melancon's motion to suppress evidence. Additionally, the record includes the police incident report prepared by Detective Tod Vignes. The report was not introduced as evidence at the motion hearing, but it is marked as Defense Exhibit 1. Paragraph 12 of defendant's guilty plea form states, "Would you explain to the court the factual circumstances surrounding this crime?" The handwritten response, initialed by defendant, is, "Submit to Police Report."
Detective Tod Vignes of the Jefferson Parish Sheriff's Office testified that, on November 11, 2001, he received a tip from a confidential informant. The informant stated that a drug transaction would take place within ten minutes in the parking lot of Rainbow Lanes bowling alley on Manhattan Boulevard in Harvey. The informant described the men and the cars that would be involved in the transaction.[4]
*228 When Vignes arrived at the scene, he saw defendant, Raymond Melancon, meeting with a second man. Melancon walked away from the other man and toward a white Ford Probe automobile. Melancon and the car fit the informant's description. Melancon stood beside the open door on the driver's side of the car, and moved his hand from the pocket of his jacket to the inside handle of the door. Melancon then sat inside the car and closed the door. Vignes approached the car and saw that there were three people inside with Melancon.
Vignes asked Melancon to exit the car, and Melancon complied. The officer placed Melancon in handcuffs and performed a pat-down search of his outer clothing for weapons, but did not find any. Backup officers arrived, and they ran a criminal history check on Melancon and his three companions. One of the men had an outstanding attachment, and the others had prior drug arrests. Vignes arrested the man who was wanted on the attachment, and found marijuana on his person in a search incident to arrest. Some other individuals in the area were temporarily detained, but were not arrested. Vignes called a K-9 officer to the scene. An officer arrived with a dog, and they surveyed the outside of the Ford. The dog alerted to the driver's side door of the car. Vignes searched the interior of the car, and recovered a bag of crack cocaine from the driver's side door handle. Melancon was then placed under arrest.
Melancon testified that he was simply at the bowling alley to socialize with his friends. He was having trouble with his car, and was about to look under the hood for the source of the problem, when several police officers surrounded him. Detective Vignes drew his gun and said, "Here, got a stolen car." Melancon attempted to show Vignes the car's registration in order to verify his ownership, but the officer did not acknowledge his protestations. Vignes searched Melancon's clothing and said, "Here you go, crack cocaine." Vignes placed Melancon in handcuffs and told him and his companions to lie on the ground.
Detective Vignes demanded to know where the rest of the drugs were. He and other officers looked inside of the Ford, but did not find any contraband. A dog arrived and inspected the car. The officers recovered about seven grams of crack cocaine. Melancon denied that he was in the parking lot to participate in a drug transaction. He testified there was no cocaine in the car prior to the police search, and that Vignes planted the cocaine on his person and in the car.
In his lone assignment of error, Melancon complains the investigatory stop conducted by Detective Vignes was invalid, arguing that the officer acted upon an uncorroborated tip from an unidentified informant, and, therefore, the evidence seized pursuant to that stop should have been suppressed. Melancon does not challenge the sufficiency of the evidence as to the element of distribution.
The Fourth Amendment to the United States Constitution and Article I, Section V of the Louisiana Constitution prohibit unreasonable searches and seizures.[5] However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal behavior is recognized by state and federal jurisprudence.[6] *229 The Terry standard is codified in LSA-C.Cr.P. art. 215.1, which allows a police officer "to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense" and to demand that the person identify himself and explain his actions.
Reasonable suspicion for an investigatory stop is something less than probable cause, and must be determined under the facts of each case by whether the officer had sufficient knowledge of the facts and circumstances to justify an infringement on the individual's right to be free from governmental interference.[7] Absent reasonable suspicion, an investigatory stop is illegal, and the evidence seized is suppressible.
An informant's tip may provide reasonable suspicion for an investigatory stop if it accurately predicts future conduct in sufficient detail to support a reasonable belief that the informant had reliable information regarding the suspect's illegal activity.[8] The ability to predict the suspect's future behavior goes to the informant's reliability, as it demonstrates inside information and a special familiarity with the suspect's affairs.[9] The sufficiency of such a tip under Terry is determined by the reliability of its assertion of illegality, and not just its tendency to identify a determinate person.[10]
Sufficiency of an informant's tip must be considered under the totality of the circumstances.[11] Corroboration of details of an informant's tip by an independent police investigation is valuable when applying the totality of the circumstances analysis.[12]
The stop in this case was instigated by a telephone call Detective Vignes received from a confidential informant. Vignes testified he had worked with the informant for six years, and that information from this individual had led to many narcotics arrests. In Vignes' opinion, the informant had proven himself to be reliable. The informant described a narcotics transaction that would take place in ten minutes in the parking lot of Rainbow Lanes on Manhattan Boulevard. Vignes testified the descriptions and information were specific, that the informant predicted future activities, and that he (Vignes) was able to corroborate it through his investigation.
The informant told Vignes that a black male driving a white Ford Probe automobile would meet with a second black male driving a gray car, and the two would conduct a transaction in the parking lot. Melancon would supply the cocaine, and the other individual would purchase it. While the officer was en route to the specified location, the informant called him again to say that the parties were already in the parking lot. When Vignes arrived at the parking lot, he saw Melancon meeting *230 with another man. Melancon walked away from the second individual, and stood at the open driver's side door of the Ford. Vignes testified that the vehicles and individuals he saw at the scene matched the description the informant had given him.
Vignes saw Melancon make a hand motion from his jacket pocket toward the interior door handle of the Ford. The officer testified that he believed Melancon had either put something into his pocket or taken something out of it. Vignes approached the car and identified himself as a police officer. At that time, Melancon sat in the driver's seat, closed the car door, and turned on the ignition. There were three other people inside the car.[13] Vignes asked Melancon to take the keys out of the ignition and get out of the car, because he was concerned that Melancon would leave the scene. Melancon complied, and the officer performed a pat-down search of Melancon's outer clothing for weapons, as sanctioned by LSA-C.Cr.P. art. 215.1. No weapons were recovered.
Based on the foregoing, we find that Detective Vignes had reasonable suspicion to justify an investigatory stop under Terry. The officer's actions were based on information from an individual whom he knew to be reliable. Vignes' surveillance of defendant was brief, but he was able to observe that Melancon fit the description the informant had given him, and Melancon's actions corresponded with the informant's assertion that he would be selling cocaine in the parking lot. In Alabama v. White, supra, the Supreme Court stated that a tip predicting future behavior can be reliable when it demonstrates, "inside informationa special familiarity with respondent's affairs."[14] In this case, the informant knew Melancon by name, was able to detail where and how, and when the criminal activity would occur, and accurately described those involved in the illegal activity.
Melancon argues that Vignes' surveillance was insufficient, and that he did not witness any activity that could be construed as an illegal transaction. On the contrary, Vignes observed some sort of exchange between Melancon and the second person, and saw Melancon furtively place something in the handle of his car door.
In State v. Nelson[15] this Court affirmed the trial court's denial of the defendant's motion to suppress the evidence, as well as the defendant's conviction for possession of cocaine. In that case, police officers learned from an informant about drug activity in the Bon Soir Motel, room 59, in Westwego. One of the officers testified that the informant had provided information in the past that had led to arrests and convictions. The informant told the officers that a subject named "Tony" and a Pontiac Grand Am rental car were involved. Officers went to the motel and observed a car meeting that description. During the investigation, the officers also learned that the defendant had rented the car and room 59. One of the officers learned that the car would be at the McDonald's Restaurant on Stumpf Boulevard in Gretna, and that it contained a large amount of cocaine. Officers set up a surveillance at the McDonald's and waited for the car.
When the officers saw the described car in the restaurant's parking lot, they approached *231 it and identified themselves as police. Defendant, who was sitting in the car's passenger seat, exited the vehicle, along with the car's driver. A pat-down search of the defendant's person revealed no weapons. Defendant took a bag of crack cocaine from inside her bra and gave it to officers. This Court found that the confidential informant's tip was sufficient to establish reasonable suspicion to justify the stop, because the information given by the informant was sufficiently corroborated by the information the officers obtained through the surveillance.[16]
Defendant further argues that, by handcuffing him, Detective Vignes went beyond the scope of LSA-C.Cr.P. art. 215.1, and that the officer's actions constituted an illegal arrest. The courts have found that an officer's handcuffing a suspect prior to an article 215.1 pat-down for weapons is acceptable where the officer's concern for safety is reasonable under the circumstances. In State v. Broussard,[17] the supreme court stated:
Like an arrest, an investigatory stop entails a complete restriction of movement, but for a shorter period of time. See United States v. Merritt, 736 F.2d 223, 229 (5th Cir.1984); State v. Bailey, 410 So.2d 1123, 1125 (La.1982). However, brevity alone does not always distinguish investigatory stops from arrests, as the former may be accompanied by arrest-like features, e.g., use of drawn weapons and handcuffs, which may, but do not invariably, render the seizure a de facto arrest. See United States v. Acosta-Colon, 157 F.3d 9, 18-19 (1st Cir.1998) ("There is no question that the use of handcuffs, being one of the most recognizable indicia of a traditional arrest, `substantially aggravates the intrusiveness' of a putative Terry stop. Thus, when the government seeks to prove that an investigatory detention involving the use of handcuffs did not exceed the limits of a Terry stop, it must be able to point to some specific fact or circumstance that could have supported a reasonable belief that the use of such restraints was necessary to carry out the legitimate purposes of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm.") (citations omitted)[.]...
In the instant case, Vignes handcuffed defendant before performing a pat-down search because backup officers had not yet arrived, and the fact that he detained a total of six individuals caused him to be concerned for his safety. Moreover, he wanted to prevent Melancon from getting back into his car and fleeing the scene. He testified that it is not uncommon for an officer to place a suspect in handcuffs before searching him. The "detention" was a brief one, as the K-9 officer arrived at the scene ten minutes after Vignes placed defendant in handcuffs.
We therefore find, based on the foregoing, that handcuffing Melancon in this case did not rise to the level of arrest. Rather, the action was authorized under LSA-C.Cr.P. art. 215.1(B) for purposes of performing a limited pat-down for weapons.
Melancon also contends that the officers did not have probable cause to conduct the automobile search that led to the discovery of the cocaine. We disagree.
When backup officers arrived at the scene, Melancon's companions were taken from the Ford and handcuffed for security reasons. Detective Vignes ran the names of defendant and his companions on the *232 police computer system, and determined that all of them had drug arrest records. One of the men had an outstanding attachment, and he was placed under arrest. That man was discovered to be in possession of marijuana. It appears that the men's criminal records, along with what Detective Vignes knew at that point, gave the officers a basis for enlarging the scope of the initial stop.[18] When a K-9 officer, Sergeant Bujol, arrived at the scene, he and a drug detection dog scanned the outside of the car. The dog alerted to the driver's side door, through which defendant had exited. Detective Vignes testified that he believed the tip from the informant, the actions he had himself witnessed, and the dog's behavior gave him probable cause to search the car. A search of the interior of the car uncovered a bag of crack cocaine in the driver's side door handle.
In State v. Lopez,[19] the Louisiana Supreme Court found that a drug detection dog's sniffing around the exterior of a vehicle following a valid traffic stop did not itself constitute a search and that the dog's subsequent alert, along with the defendant's nervous demeanor, gave officers probable cause to search for contraband.[20]
We find that, based on the holding in Lopez, the officers in the instant case were justified in allowing the drug detection dog to inspect Melancon's car, and that the dog's alert, along with the surrounding circumstances, was sufficient to support probable cause for a search. Accordingly, we find Melancon's assignment of error to be without merit.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux,[21] and State v. Weiland.[22] The review reveals no errors patent in this case.
Accordingly, based on the foregoing, the defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] No written motion to suppress evidence is found in the record.
[2] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
[3] 338 So.2d 584 (La.1976).
[4] The police report, in part, provides: The informant stated that a black male subject intended to deliver a quantity of crack cocaine to another black male subject in the parking area of the Rainbow Lanes ... within the next ten minutes. The informant stated that the black male requesting the crack cocaine was standing in the parking area of the bowling alley wearing a brown shirt with a tiger design on it and was in a Gray car. The black male delivering the cocaine was going to be driving a white Ford Probe. The informant stated the black male requesting the cocaine stated that he was negotiating the deal for another individual who would have to arrive with the money to make the purchase. (Defense Exhibit 1, p. 1).
[5] State v. Belton, 441 So.2d 1195, 1198 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Mercante, 02-712, p. 4 (La.App. 5 Cir.12/30/02), 836 So.2d 596, 599.
[6] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, supra; State v. Williams, 98-1006, p. 9 (La.App. 5 Cir.3/30/99), 735 So.2d 62, 70, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
[7] State v. Triche, 03-149 (La.App. 5 Cir. 5/28/03), 848 So.2d 80.
[8] Alabama v. White, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990); State v. Smith, 00-1838, p. 1 (La.5/25/01), 785 So.2d 815, 816 (per curiam).
[9] Alabama v. White, supra.
[10] Florida v. J.L., 529 U.S. 266, 272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000).
[11] Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
[12] State v. Raheem, 464 So.2d 293, 296 (La. 1985).
[13] Vignes testified that the informant did not tell him defendant would be accompanied by three other people.
[14] 496 U.S. at 332, 110 S.Ct. at 2417.
[15] 02-65 (La.App. 5 Cir.6/26/02), 822 So.2d 796, writ denied, 02-2090 (La.2/21/03), 837 So.2d 627,
[16] State v. Nelson, 02-65 at p. 8, 822 So.2d at 803.
[17] 00-3230, pp. 3-4 (La.5/24/02), 816 So.2d 1284, 1287,
[18] See, State v. Lopez, 00-0562, p. 5 (La.10/30/00), 772 So.2d 90, 93.
[19] 00-0562 at p. 6, 772 So.2d at 93
[20] See also, State v. Romsky, 01-1067, p. 11 (La.App. 5 Cir.4/10/02), 817 So.2d 186, 192.
[21] 312 So.2d 337 (La.1975).
[22] 556 So.2d 175 (La.App. 5 Cir.1990).