900 So.2d 1005 (2005)
STATE of Louisiana
v.
Gilbert FRANCOIS.
No. 04-KA-1147.
Court of Appeal of Louisiana, Fifth Circuit.
March 29, 2005.
*1007 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Paige Cline, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
*1008 THOMAS F. DALEY, Judge.
The defendant, Gilbert Francois, was charged in a Bill of Information on April 7, 2003, with possession with intent to distribute cocaine in violation of LSA-R.S. 40:967(A). On April 8, 2003, the defendant pled not guilty.
The defendant filed several pretrial motions, including a Motion to Suppress the Evidence on April 14, 2003. Subsequently, he filed a Memorandum in Support of Motion to Suppress the Evidence on March 18, 2004. On March 24, 2004, the trial court denied the defendant's Motion to Suppress, and the defendant withdrew his not guilty plea and entered a plea of guilty under Crosby.[1] The defendant was sentenced to five years of imprisonment at hard labor.[2]
The defendant appeals the denial of his Motion to Suppress the Evidence.

FACTS[3]
On March 6, 2003, Sergeant Warren Martin and Agent Chris Morris of the Narcotics Division of the Westwego Police Department received information from a reliable confidential informant (C.I.) that a narcotics transaction would take place at the Burger King in Westwego. The police were advised that a black male, Gilbert Francois, would deliver a specific amount of crack cocaine to another male subject and would arrive between 6:30 p.m. and 7:00 p.m. According to the C.I., the black male would arrive in a white Dodge Intrepid and pull to the rear of the Burger King to make the transaction.
The police set up surveillance, at approximately 6:15 p.m., near the Burger King. At 6:45 p.m., Sergeant Martin and Agent Morris, occupying different unmarked vehicles, observed a white Dodge Intrepid at the Burger King and the black male driver engaging in a short conversation with another white male subject, who had been standing at the rear of the Burger King. The white male got into the passenger's side of the Intrepid and the vehicle left Burger King as the police followed them. The vehicle was stopped for investigative purposes at the Intersection of Avenue H and U.S. 90B.
The police ordered the driver, identified as Gilbert Francois, out of the Intrepid, which later was determined to be a rental vehicle. The passenger of the vehicle, described in the police report as an unidentified Asian male passenger, was also asked to exit the vehicle.[4] Sergeant Martin ran K-9 Ringo on the outside of the vehicle, and it showed an odor response to the driver's side door of the vehicle. Once placed inside the vehicle, the K-9 showed an odor response on the upper portion of the driver's side dashboard. In addition, Officer Nick Cottone ran K-9 Duco on *1009 the vehicle for both verification and training purposes, and it also showed an odor response to the vehicle.
Agent Morris then conducted a search of the area where the K-9 showed the odor response. After peeling back a portion of the vehicle's roof liner, he discovered a small plastic bag containing off-white rock like objects. Agent Morris conducted a field test and determined that the objects tested positive for cocaine. He then told the defendant about the cocaine and advised him of his rights. Agent Morris also discovered various documents, in the vehicle, belonging to the defendant and over $400.00 on his person.[5] Due to the amount of narcotics found and the information from the C.I., the defendant was charged with possession with intent to distribute and was transported to the Jefferson Parish Correctional Center (J.P.C.C.) for booking.
Agent Morris was unable to obtain information from the passenger, who claimed he could not speak English. After failing to find an interpreter and anything illegal in his possession, the passenger was released.

DISCUSSION
In his sole Assignment of Error, the defendant complains that the investigatory stop of his vehicle should have been deemed an illegal warrantless search and the evidence seized as a result of the stop suppressed. The defendant claims that the information received from the informant did not sufficiently establish a reasonable suspicion that he was engaged in criminal activity, and he questions the informant's reliability. Moreover, the defendant contends that the stop was unlawful because the police did not observe any illegal activity before the stop. The State argues that the informant was reliable and gave specific information regarding the transaction, which was verified by the police, and therefore, suppression of the evidence is unwarranted.
The Fourth Amendment to the United States Constitution and Art. 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. State v. Boss, 04-457, p. 4 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585.
Law enforcement officers are authorized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to perform investigatory stops, which permit officers to stop and interrogate a person who is reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Gresham, 97-1158, p. 6 (La.App. 5 Cir. 4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200. The Terry standard, as codified in LSA-C.Cr.P. art. 215.1, authorizes a police officer "`to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense' and to demand that the person identify himself and explain his actions." State v. Melancon, 03-514, p. 5 (La.App. 5 Cir. 10/28/03), 860 So.2d 225, 229, writ denied, 03-3503 (La.4/23/04), 870 So.2d 297.
The "reasonable suspicion" necessary for an investigatory stop "is something less than probable cause, and must be determined under the facts of each case by whether the officer had sufficient knowledge of the facts and circumstances *1010 to justify an infringement on the individual's right to be free from governmental interference." State v. Melancon, supra. Without reasonable suspicion, an investigatory stop is illegal and the evidence seized from that stop is suppressible. State v. Triche, 03-149, p. 4 (La.App. 5 Cir. 5/28/03), 848 So.2d 80, 84, writ denied, 03-1979 (La.1/16/04), 864 So.2d 625.
Under certain circumstances, a tip by an informant can supply reasonable suspicion to detain and question a person. State v. Rodriguez, 99-914, p. 4 (La.App. 5 Cir. 1/25/00), 761 So.2d 14, 17, writ denied, 00-0599 (La.4/7/00), 759 So.2d 765. Generally, the informant's tip must contain predictive information regarding the future behavior of the reported suspect, and the tip must be corroborated. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); State v. Robertson, 97-2960, p. 3 (La.10/29/98), 721 So.2d 1268, 1270.
Whether an informant's tip creates reasonable suspicion necessary to conduct an investigatory stop is determined under the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983); State v. Nelson, 02-65, p. 6 (La.App. 5 Cir. 6/26/02), 822 So.2d 796, 801, writ denied, 02-2090 (La.2/21/03), 837 So.2d 627. The anonymous tip's sufficiency under Terry is determined by the reliability of its illegality assertion, not merely its tendency to identify a determinate person. Florida v. J.L., 529 U.S. 266, 272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000); State v. Triche, supra, at 85. An informant's tip may provide reasonable suspicion for an investigatory stop if the tip accurately predicts the suspect's future conduct in sufficient detail to support a reasonable belief that the informant possessed reliable information regarding the suspect's illegal activity. State v. Melancon, 860 So.2d at 229 (citations omitted). The anonymous caller's ability to predict the suspect's future behavior goes towards reliability because it demonstrates inside information and a special familiarity with the suspect's affairs. Alabama v. White, 496 U.S. at 332, 110 S.Ct. 2412; State v. Melancon, supra.
In applying the totality of the circumstances analysis, independent corroboration by police investigation of the details of an informant's tip is valuable. State v. Melancon, 860 So.2d at 229 (citing State v. Raheem, 464 So.2d 293, 296 (La. 1985)). Even a non-predictive anonymous tip coupled with either police corroboration or independent police observation of unusual suspicious conduct can supply police with the necessary reasonable suspicion to temporarily detain the suspect. State v. Robertson, supra at 1270; State v. Triche, supra. "[I]f the tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Alabama v. White, 496 U.S. at 330, 110 S.Ct. 2412; State v. Morgan, 00-1501, p. 5 (La. App. 5 Cir. 3/28/01), 783 So.2d 514, 519.
In a hearing on a Motion to Suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. State v. Tovar, 03-513, p. 4 (La.App. 5 Cir. 10/15/03), 860 So.2d 51, 54. LSA-C.Cr.P. art. 703(D). "The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression." State v. Flagg, 01-65, p. 4 (La.App. 5 Cir. 7/30/01), 792 So.2d 133, 138, writ denied, 01-2534 (La.9/20/02), 825 So.2d 1159 (citation omitted). To determine whether the trial court's denial of the Motion to Suppress is correct, the appellate court may consider *1011 the evidence adduced at the suppression hearing, as well as the evidence presented at trial. State v. Butler, 01-907, p. 4 (La. App. 5 Cir. 2/13/02), 812 So.2d 120, 124.
In this case, the trial judge denied the Motion to Suppress based on the submitted memoranda and the reports "as well as all of the other information that [the defense] attorney asked me to read [in] camera."[6] Subsequently, the defendant pled guilty; therefore, no evidence was presented at trial.
The defendant claims the C.I.'s tip was insufficient to justify an investigatory stop. In addition, he claims that the informant was never identified nor deemed reliable by the court. Relying on State v. Robertson, supra, the defendant claims that the evidence should have been suppressed, because no illegal activity was observed prior to his stop. However, the holding in Robertson does not mandate that officers observe illegal activity prior to conducting an investigatory stop.
In State v. Robertson, supra, the Louisiana Supreme Court found the officers lacked reasonable suspicion to stop the defendant. The officers received an anonymous tip that the defendant, who was named and described, was selling drugs. The tip also described the defendant's vehicle and provided where the vehicle would be parked when the defendant was not using it to sell drugs. After going to the location, the officers saw the vehicle being driven away and followed the vehicle. When the defendant stopped, the officers detained him and called for a canine. Although the officers corroborated certain aspects of the tip, such as the defendant's name, physical description, and the location of the vehicle, the Supreme Court found that the tip lacked predictive information. The court noted the tip "failed to predict the specific time period in which the defendant would be engaged in illegal activity." State v. Robertson, 721 So.2d at 1270. The Supreme Court stated:
We note that the police were not powerless to act on the non-predictive, anonymous tip they received. The officers could have set up more extensive surveillance of defendant until they observed suspicious or unusual behavior. Furthermore, if, after corroborating the readily observable facts, the officers had noticed unusual or suspicious conduct on defendant's part, they would have had reasonable suspicion to detain him. These circumstances, however, were not present here. In the absence of any suspicious conduct or corroboration of information from which police could conclude that the anonymous informant's allegation of criminal activity was reliable, we must conclude that there was no reasonable suspicion to detain defendant. . . .
Id. at 1270-1271 (emphasis added).
Although the focus of the defendant's Brief is based on the fact that no criminal activity was witnessed before he was stopped by the police, this is simply not the standard. Police officers have the authority to stop someone in a public place, if they reasonably suspect that person is about to commit an offense, even though no illegal activity has taken place and no one has approached the defendant's vehicle to purchase drugs. State v. Jackson, 02-146, p. 4 (La.App. 5 Cir. 5/29/02), 820 So.2d 1147, 1151 (citing LSA-C.Cr.P. art. 215.1).
In State v. Nelson, supra, this Court affirmed the denial of the defendant's Motion to Suppress the Evidence and conviction for possession of cocaine. In Nelson, *1012 the police officers learned about drug activity in Room 59 of the Bon Soir Motel, in Westwego, from an informant, who had provided information in the past to them that led to arrests and convictions. The informant told the police that a subject named "Tony" and a Pontiac Grand Am rental car were involved. The police went to the motel, and observed the Grand Am. Through their investigation, the officers learned that the defendant had rented the car and room, and, subsequently that the car containing a large amount of cocaine would be at the McDonald's Restaurant on Stumpf Boulevard, in Gretna. The police set up surveillance at the McDonald's. The officers approached and identified themselves as police when they saw the car, in the restaurant's parking lot. The driver and the defendant exited the vehicle, after which the defendant took a bag of crack cocaine from inside her bra and gave it to officers. This Court found that the tip was sufficient to establish reasonable suspicion to justify the stop, because the information in the tip was sufficiently corroborated by the information the officers obtained through the surveillance.
In State v. Shepherd, 470 So.2d 608 (La.App. 1 Cir.1985), the court found that there was probable cause to stop and arrest the defendant, and search her vehicle, based on a confidential informant's tip. The police corroborated the information in the tip that accurately predicted the defendant's travel plans, but not the possession and delivery of the drugs. The court found that since the predictions of the confidential informant were corroborated by the police there was a reasonable basis to believe the confidential informant's unverified allegation of drug possession also was true, because the accurate predictions indicated a fair probability that the confidential informant's basis of knowledge was either the defendant herself or someone she trusted. The court reasoned that the corroboration of the defendant's innocent behavior provided probable cause to believe the allegation of drug possession was reliable. See also, State v. Robertson, supra (citing Illinois v. Gates, supra.).
In the present case, the tip by itself did not give the police reasonable suspicion to stop the defendant. However, the stop was not based solely on the tip. Rather, the stop was based on the tip and corroboration by the police of certain aspects of the tip, which they observed. The C.I. named and described the defendant and his vehicle. The C.I. stated he would arrive at a particular Burger King within a specific time frame, as distinguished from the Robertson case. The C.I. then stated the defendant would meet another male subject, in the rear of the Burger King, to deliver a specific amount of Crack Cocaine, in a drug transaction. The police set up surveillance at the Burger King and corroborated certain aspects of the tip, such as the defendant's timely presence, physical description, and vehicle. They observed the defendant meet with someone, but did not see any type of transaction, and then observed the other subject get into the vehicle before they drove away. They then followed the defendant as he left the Burger King. Thereafter, the police stopped the vehicle. These observations, coupled with the tip that the defendant would be engaged in narcotic activity, gave the officers reasonable suspicion to stop the defendant. After the stop, the police identified the defendant.
According to the police report and narrative, the police's actions were based on information from an individual whom they considered reliable. Further, the C.I.'s veracity and reliability were demonstrated, in the instant case, by the defendant's appearance at the time and place predicted by the C.I., in the type of car *1013 described by the C.I. The C.I.'s prediction about the cocaine in the car was proven true when the police found the cocaine hidden in the car. The C.I. had "inside information" and a "special familiarity" with the defendant's affairs as evidenced by his ability to provide the tip predicting the defendant's future behavior. This information once corroborated created sufficient suspicion of criminal conduct to warrant an investigative stop. At this point the defendant was not arrested. He was asked to identify himself and as part of the investigative stop a dog was used to continue the investigation by sniffing outside defendant's vehicle.
The Louisiana Supreme Court has found that a dog's sniffing around the vehicle's exterior does not constitute a search. State v. Lopez, 00-562 (La.10/30/00), 772 So.2d 90, 93 (per curiam) (citations omitted). In Lopez, the court found that the dog's subsequent alert, consistent with the defendant's nervousness, during a routine traffic stop, gave officers the required probable cause to search the vehicle for contraband. Id.[7] The Fourth Amendment allows police to search a vehicle absent a warrant if a car is readily mobile and probable cause exists to believe it contains contraband. Id.
Although the present case does not involve a traffic stop, the Louisiana Supreme Court has also addressed this issue in State v. Gant, 93-2895 (La.5/20/94), 637 So.2d 396 (per curiam). In Gant, after receiving detailed information from an informant and conducting surveillance, officers made an investigatory stop of the defendant's vehicle and then "pursued a means of investigation likely to confirm or dispel their suspicions quickly by summoning to the scene a drug-certified dog." Id. at 397 (citing United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)). Once the dog alerted on the vehicle's trunk, the officers had probable cause to search the vehicle, and the warrant requirement was excused because of the exigent circumstances arising from the stop of a vehicle on the open road. Id. (citations omitted).
In the present case, once the police observed the K-9(s) respond positively to the vehicle, they had probable cause to conduct a search of the vehicle; therefore, the cocaine was properly seized.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990). The following errors were found.
The trial court failed to properly inform the defendant of the prescriptive period for filing Post-Conviction Relief pursuant to LSA-C.Cr.P. art. 930.8. The trial court advised the defendant that he had "two years from the date your sentence becomes final to file an application complaining of the constitutionality of the process." The commitment states that the period runs from the time his conviction and sentence become final. This Court has held that the failure to advise the defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete. State v. Grant, 04-341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598 (citing State v. George, 99-887, p. 3 *1014 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975) (emphasis as found in the original). Therefore, this case is remanded and the district court is ordered to inform the defendant of the correct time period in which to file an Application for Post-Conviction Relief by sending written notice to the defendant within ten days of the rendition of this opinion, and to file written proof that the defendant received the notice, in the record. State v. Grant, supra.
According to the transcript, the Defendant's Acknowledgement of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty, and his Motion for Appeal all provide that defendant pled guilty pursuant to Crosby;[8] however, the commitment indicates that his plea was under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).[9] In addition, the defendant pled guilty to possession with intent to distribute cocaine, the commitment omits the term possession and reflects that he pled guilty to "DIST/WITD OF A CDS COCAINE." If a discrepancy exists between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983). Therefore, this case is remanded and the district court is ordered to amend the commitment to conform to the transcript.
For the foregoing reasons, the trial court's denial of the Motion to Suppress the Evidence is affirmed, and the case is remanded to inform the defendant of the correct time period in which to file an Application for Post Conviction Relief and to amend the commitment to conform to the transcript.
AFFIRMED AND REMANDED.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976). The transcript reflects that the ruling on the Motion to Suppress is the pre-trial ruling the defendant was reserving for appeal by pleading guilty under Crosby.
[2] In addition to getting credit for time served, the defendant's sentence was to run concurrently with any parole time. The defendant was ordered to serve his sentence in the About Face Program at Orleans Parish Prison, and the court agreed to entertain a motion to consider reducing the sentence upon completion of the program's five steps.
[3] Since the defendant pled guilty to the charges against him, the following facts are taken from the Arrest Report and Probable Cause Affidavit and Sergeant Warren Martin's narrative from the Westwego Police Department Narcotics Report. In addition, counsel stipulated to using the facts, in lieu of testimony, at a Motion to Suppress hearing.
[4] The narrative from the Westwego Police Department Narcotics Report first describes the vehicle passenger as a white male, but later describes the passenger as an unidentified Asian male.
[5] The defendant was not employed, at the time of this incident.
[6] The trial court made an "[in] camera inspection" of the complaints lodged against officers involved in the stop. These complaints were not made part of the record.
[7] The United States Supreme Court has recently decided Illinois v. Caballes, ___ U.S. ___, ___, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005) and found that: "[i]n this case, the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation. Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement."
[8] Upon entering a plea of guilty, a defendant may be allowed appellate review, if he expressly reserves his right to appeal a specific adverse ruling. State v. Landry, 02-1242, p. 4 (La.App. 5 Cir. 4/29/03), 845 So.2d 1233, 1236, writ denied, 03-1684 (La.12/19/03), 861 So.2d 556 (citations omitted).
[9] A "best interest" or Alford plea is one in which the defendant enters a guilty plea while maintaining his innocence. State v. Landry, supra.