WALTER J. ROTHSCHILD, Judge.
|gOn June 10, 2010, the Jefferson Parish District Attorney filed a bill of information charging defendant, Jose Sierra, with possession of cocaine in excess of 28 to 200 grams in violation of LSA-R.S. 40:967(F). Defendant pled not guilty to this charge at his arraignment on July 23, 2010. The trial court denied defendant’s motions to suppress the evidence and statement on September 23, 2010.
On October 25, 2010, defendant entered a plea of guilty as charged pursuant to State v. Crosby.[1] On this same date, defendant was sentenced to six years imprisonment with the Department of Corrections. The first five years of the sentence was ordered to be served without benefit of parole, probation, or suspension of sentence.
Defendant now appeals on the basis of two assignments of error: 1) the trial court erred in denying his motion to suppress the evidence, and 2) the trial court |serred in denying his motion to suppress the statement. For the reasons stated herein, we affirm the conviction and sentence, but remand the matter to the trial court for correction of the commitment.
*243 At the suppression hearing in this matter, JPSO Detective Elvin Módica testified that on the evening of April 22, 2010, he was assisting Detective Eric Boland and set up surveillance at the Best Buy on Veterans Highway in Metairie. Detective Módica explained that information was received from a reliable confidential informant (Cl) that a Hispanic male would be arriving at the Best Buy at 6205 Veterans Boulevard between 7:30 and 8:00 to deliver a quantity of cocaine in a silver Dodge Durango. According to Detective Módica, the informant gave Detective Boland a physical description of the Hispanic male. The informant said that the male was approximately 26 years old and about 5'8" with a heavy/large build. Because of this information, surveillance was set up during the time frame provided by the informant. Detective Módica testified that Detective Boland observed the vehicle arrive at Best Buy and a Hispanic male exited the vehicle while speaking on a cell phone. Detective Módica said at that point they decided to conduct an investigatory stop.
As Detective Módica and a second detective approached defendant, they identified themselves as police officers. Detective Módica said defendant appeared to get nervous. Detective Módica testified that defendant was holding a Marlboro cigarette box in his hand and “kind of turned and tried to discretely drop the box and began to walk away” from them. Detective Módica testified that he did not lose sight of the box after it was dropped. Defendant was detained. The second detective retrieved the Marlboro cigarette box and it contained an off-white powder inside that later tested positive for cocaine. Defendant was turned over to Detective Boland.
|4Detective Eric Boland testified that he had received specific information from a Cl, who had been used in the past many times and was paid by the Jefferson Parish Sheriffs Office, that a Hispanic male would be delivering a quantity of cocaine to the parking lot of Best Buy on Veteran’s Highway and would be arriving in a 2002 Dodge Durango. The Cl described the male as approximately 5'8" and as having a heavy-build. He testified that surveillance was set up in the parking lot and a vehicle matching the description given by the Cl arrived. He said that defendant matched the description of the male who was supposed to deliver the cocaine and that he exited the passenger side of the vehicle. He stood by his vehicle and immediately used his cell phone. He did not make any attempt to walk towards the store. It was decided that an investigatory stop would be conducted.
Detective Boland testified that defendant was advised of his rights, appeared to have understood them, and did not ask for an attorney. He said that they conversed in English and that there was no need for an interpreter, but out an abundance of caution, he obtained a Spanish interpreter. Detective Boland denied that defendant was forced, threatened, or coerced into making statements. He also denied that defendant was promised anything in exchange for his statement.
Detective Dmitri Ikonitski testified that he also assisted Detective Boland in this investigation. He explained that he was asked to assist as an interpreter because he is fluent in the Spanish language. He testified that he assisted with translation and in advising defendant of his rights. He stated that he advised defendant of his rights in Spanish and read the Miranda rights from a Spanish card. He testified that defendant was also asked if he understood his rights, and with these rights in mind, whether he wanted to answer questions and speak to the officers. He said that defendant responded positively. He *244 said that defendant never requested an attorney. He testified that defendant was not forced, threatened |5or coerced into making a statement, but was cooperative. He also testified that defendant was not promised anything in exchange for making the statements. Detective Ikonitski testified that defendant fully understood his rights and voluntarily signed the waiver form, agreeing to speak with him.
Detective Ikonitski also obtained a consent to search from defendant. He identified his own writing in the Spanish consent to search form. Detective Ikonitski said he read the form to defendant and defendant had a chance to read the form and to comprehend its contents. Detective Ikon-itski testified that he went over this form with defendant, who was consenting and giving them permission to search the entire premises of his house at 424 Urban-dale Street, Apartment # 1, in Marrero. Detective Ikonitski testified that defendant was not forced, threatened, or coerced into signing the form and was not promised anything in exchange. Detective Ikonitski stated that defendant signed the form and freely allowed a search of his home.
Detective Ikonitski testified that Jennifer Rodrigue, who he believed was defendant’s wife or live-in girlfriend, also consented to a search of the residence. Detective Ikonitski identified the consent form and recognized his signature. He testified that no one forced, threatened, or coerced her into signing the form.
At the conclusion of the hearing, the trial court found no constitutional violations with the evidence seized, the search, or the statements given by defendant. The trial court denied all motions to suppress.
By this appeal, defendant raises two issues involving the trial court’s ruling on the motions to suppress. The State contends that these issues were not properly preserved for appellate review, and that the appeal should therefore be dismissed.
The record in this case indicates that defendant’s guilty plea was accepted pursuant to Crosby, which allows appellate review if, at the time the plea is Centered, defendant expressly reserves his right to appeal a specific adverse ruling in the case. State v. Crosby, 338 So.2d 584 (La.1976). Absent specification of the specific adverse ruling, the Louisiana Supreme Court has held that an appellate court should presume that the Crosby reservation preserves review of those evidentiary rulings which go to the heart of the prosecution’s case, such as the denial of a motion to suppress, and not rulings that may affect the conduct of the trial but do not substantially relate to guilt. State v. Joseph, 03-315, p. 1 (La.5/16/03), 847 So.2d 1196.
In the present case, the transcript of defendant’s guilty plea indicates that, in entering the Crosby plea, defendant was “preserving for review his ability to go to trial on this case.” At the time of the Crosby plea, defendant failed to specify the errors in the motion to suppress ruling that he now advances on appeal. Nevertheless, in light of the decision in State v. Joseph, supra, we find that defendant’s failure to specify the adverse ruling limits the scope of the appellate review, but it does not preclude review altogether. As the rulings on the motion to suppress are evidentiary rulings which go to the heart of the prosecution’s case, we find that defendant’s pre-trial motions to suppress are reviewable on appeal.

ASSIGNMENT OF ERROR NUMBER ONE

The trial court erred in failing to grant the defense’s motion to suppress the evidence because the evidence was illegally retrieved.
*245 Defendant argues it was the officers’ intent upon their approach to arrest defendant. Defendant contends that if the Court considers that defendant was under arrest when the police decided to stop defendant, there was no probable cause, and if there was no probable cause, then the evidence should have been suppressed as fruits of the poisonous tree. Defendant further argues that even assuming this was considered a stop, the police lacked the requisite reasonable 17suspicion to make an investigatory stop. Defendant argues that the Cl’s tip was vague and the stop was premature. He contends that the police could not articulate suspicion that he committed, was committing, or was about to commit a crime. Defendant argues that the officers testified that nothing unusual or suspicious was observed prior to the decision to stop defendant. He argues that the police had no cause to stop much less approach defendant without any indication of suspicious activity. Defendant concludes that there was no reasonable suspicion to stop him and insufficient probable cause to arrest him, and therefore, the trial court erred in denying the motion to suppress.
The State contends that there was no actual or imminent stop at the time defendant discarded the cigarette pack and, therefore, the narcotics found inside the pack were abandoned when defendant threw it to the ground and the officers seized it. The State concludes that the trial court was not manifestly erroneous in denying defendant’s motion to suppress.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. War-rantless searches and seizures are per se unreasonable unless justified by one of the exceptions to the warrant requirement. State v. Wolff, 09-508, pp. 4-5 (La.App. 5 Cir. 12/29/09), 30 So.3d 897, 901. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Loeb, 09-341, pp. 5-6 (La.App. 5 Cir. 2/23/10), 34 So.3d 917, 921, writ denied, 10-0681 (La.10/15/10), 45 So.3d 1110.
In a hearing on a motion to suppress evidence seized without a warrant, the State bears the burden of proof. See LSA-C.Cr.P. art. 703(D). The trial court’s Ldecision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Bellow, 07-824, p. 5 (La.App. 5 Cir. 3/11/08), 982 So.2d 826, 829. A determination of credibility lies within the sound discretion of the trial court and should not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984).
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal activity is recognized by LSA-C.Cr.P. art. 215.1, as well as federal and state jurisprudence. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). A law enforcement officer may stop and question a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit a criminal offense. State v. Sam, 08-220, p. 5 (La.App. 5 Cir. 6/19/08), 988 So.2d 765, 769, writ denied, 08-1984 (La.5/15/09), 8 So.3d 577. Investigatory stops require reasonable suspicion of criminal activity. State v. Boss, 04-457, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585. Reasonable suspicion is something less than probable *246 cause to arrest and requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual’s right to be free from government interference. Sam, 08-220 at 5, 988 So.2d at 769. Absent reasonable suspicion, an investigatory stop is illegal and the evidence seized as a result is suppressible. Boss, supra.
The determination of reasonable grounds for an investigatory stop does not rest on the officer’s subjective beliefs or attitudes, but is dependent on an objective evaluation of all the circumstances known to the officer at the time of his challenged action. Sam, supra. In determining whether an officer acted reasonably 19in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. A reviewing court must take into account the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer that might elude an untrained person. An officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidence of crimes are factors that may support reasonable suspicion for an investigatory stop. Sam, 08-220 at 5-6, 988 So.2d at 769-70. Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Loeb, 09-341 at 7, 34 So.3d at 922.
When evaluating the totality of the circumstances, a defendant’s evasive conduct in response to police presence is a factor that is accorded significant weight. State v. Enclade, 03-353 (La.App. 5 Cir. 9/16/03), 858 So.2d 8, 13. The Louisiana Supreme Court has recognized that it has expressly held or at least implied that the defendant’s flight from police officers is the most important factor in the totality of the circumstances analysis. State v. Morgan, 09-2352, (La.3/15/11), 59 So.3d 403, 408.
Under certain circumstances, an informant’s tip can supply reasonable suspicion to detain and question a person. State v. Francois, 04-1147, p. 6 (La.App. 5 Cir. 3/29/05), 900 So.2d 1005, 1010. Generally, the informant’s tip must contain predictive information regarding the future behavior of the reported suspect, and the tip must be corroborated. Id. Whether an informant’s tip creates reasonable suspicion necessary to conduct an investigatory stop is determined under the totality of the circumstances. Id. An informant’s tip may provide reasonable suspicion for an investigatory stop if the tip accurately predicts the suspect’s future conduct in sufficient detail to support a reasonable belief that the |10informant possessed reliable information regarding the suspect’s illegal activity. The ability to predict the suspect’s future behavior goes towards reliability because it demonstrates inside information and a special familiarity with the suspect’s affairs. Id.
In applying the totality of the circumstances analysis, independent corroboration by police investigation of the details of an informant’s tip is valuable. Francois, 04-1147 at 6-7, 900 So.2d at 1010. Even a non-predictive anonymous tip coupled with either police corroboration or independent police observation of unusual suspicious conduct can supply police with the necessary reasonable suspicion to temporarily detain the suspect. Francois, 04-1147 at 7, 900 So.2d at 1010.
An arrest occurs when the circumstances indicate intent to affect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. *247 State v. Bazley, 09-358, p. 27 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 24, writ denied, 11-0282 (La.6/17/11), 63 So.3d 1039. A seizure is an arrest, rather than an investigatory stop, when a reasonable person, in the defendant’s position would have understood the situation to be a restraint on freedom of movement of the degree that the law associates with a formal arrest. Id. An individual is seized within the meaning of the Louisiana Constitution when either he is “actually stopped” or when an “actual stop” of the individual is “imminent.” See State v. Tucker, 626 So.2d 707, 712 (La.1993).[2]
“[I]f ... property is abandoned without any prior unlawful intrusion into a citizen’s right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person’s custodial rights.” Belton, 441 So.2d at 1199. See also Loeb, 09-341 at 10, 34 So.3d at 924 (Property may be lawfully seized when it is abandoned prior to any unlawful intrusion into a citizen’s right to be free from governmental interference).
In the present case, we find that the officers had reasonable suspicion to conduct an investigatory stop of defendant. The CI, who had been used by the officers in the past many times, provided information regarding the delivery of cocaine at a specific location and at a specific time, within a 30-minute time frame. The CI gave a description of the vehicle that the seller would arrive in, including the year, color, make, and model, and gave a description of the seller, including his ethnicity, age, height, and build. The police set up surveillance and corroborated the information provided by the CI, who had been used many times in the past. Defendant matched the description of the seller and arrived in a vehicle that matched the vehicle described by the CI. After defendant exited the vehicle, he did not proceed towards the store but instead stood outside of the vehicle and used his phone. Upon the approach of the officers, defendant appeared to get nervous and tried to discretely drop the Marlboro box and walked away from the officers. We find that the information from the CI, which was corroborated by the officers during surveillance in the parking lot, provided reasonable suspicion to conduct an investigatory stop of defendant. Further, defendant’s own actions upon the officers’ approach and their identification of themselves would have offered a further basis for suspicion. We also note that after defendant dropped the box containing cocaine, there would have been probable cause to arrest him, and we fail to find merit in his argument that he was arrested prior to this time.
We further fail to find that the officer’s actions constituted an actual or imminent stop. No testimony was elicited that the officers approached with drawn weapons or in a threatening or forceful manner. The record indicates that | ^defendant appeared nervous, dropped the cocaine, and attempted to walk away upon the officers’ approach and identification of themselves as officers. In State v. Jackson, 00-3083, pp. 2-3 (La.3/15/02), 824 So.2d 1124, 1126 (per curiam), the Louisiana Supreme Court held that “by merely identifying themselves as the police, before they asked respondent any questions, drew their weapons, or otherwise asserted their official authority over him, the officers had *248 not yet ‘seized’ respondent when he discarded his cocaine packet.”
For the reasons stated herein, we find no error in the trial court’s ruling denying defendant’s motion to suppress evidence.

ASSIGNMENT OF ERROR NUMBER TWO

The trial court erred in failing to grant the defense’s motion to suppress the statement.
Defendant next argues that he was a Spanish speaking man who did not really speak or understand English, but was arrested and questioned in English. Defendant contends that he gave the police a statement and consent to search his home before they called the fellow officer to advise him of his rights in Spanish, using a Spanish form that defendant eventually signed. He contends that the recorded waiver is insufficient to convey to appellant the rights he possessed under Miranda, noting that it was signed after he gave a statement and after he gave consent for the police to relocate and search defendant’s home. Defendant concludes that the circumstances of this case fail to satisfy the knowing and intelligent waiver standard required and, therefore, the court erred in denying the motion to suppress.
The State argues that defendant’s claim that he was not advised of his rights in Spanish but rather was Mirandized only in English, which he claims he has limited comprehension of, has no merit. The State asserts that the record shows 11sdefendant was Mirandized in English, a language that he fully understands, and was also Mirandized in Spanish, his native language. The State notes that defendant’s counsel said that defendant speaks English and the trial judge noted that while in court defendant was seen engaging in a conversation with another inmate who was speaking English. The State contends that he was not coerced, threatened, or promised anything in exchange for his statement. The State claims that although defendant contends that the waiver of rights form was signed after defendant gave a statement, the record does not support this. It contends that the record shows that after seizing the abandoned cigarette box and, after learning the box contained drugs, defendant was Mirandized and arrested. The State further contends defendant gave a statement only after waiving his rights with a waiver in which he fully understood.
The State has the burden of proving the admissibility of a purported confession or statement by the defendant. State v. Arias-Chavarria, 10-116, p. 11 (La.App. 5 Cir. 9/28/10), 49 So.3d 426, 433, writ denied, 10-2432 (La.2/25/11), 58 So.3d 460 (citing LSA-C.Cr.P. art. 703(D)). Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda[3] rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements or promises. Arias-Chavarria, 10-116 at 11-12, 49 So.3d at 433. See also LSA-R.S. 15:451.
A determination of voluntariness is made on a case-by-case basis, depending on the totality of the facts and circumstances of each situation. The admissibility of a confession or statement is a determination for the trial judge and the judge’s | ^conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or state *249 ment are entitled to great weight and will not be overturned unless unsupported by the evidence. Id., 10-116 at 12, 49 So.3d at 433. Testimony of the interviewing police officer alone may be sufficient proof that a defendant’s statements were freely and voluntarily given. Id.
Initially, it is noted that defendant filed a written motion to suppress his statement that simply and generically argued that his statement was “illegally and unlawfully obtained.” Further, at the conclusion of the suppression hearing, without further argument, defense counsel said he “would submit based solely on the testimony.” As such, we find that defendant is raising this more specific argument for the first time on appeal.
A defendant bears the burden of asserting the basis for his motion to suppress in order to give the State adequate notice so that it may present evidence and address the issue. State v. Lobo, 11-51, 2011 WL 5061411 at *7 (La.App. 5 Cir. 10/25/11). After the defendant files a motion to suppress, the state has the burden to prove the defendant’s confession was of a free and voluntary nature. Therefore, the defendant is limited, on appeal, to the grounds he articulated at trial; a new basis for the claim, even if it would be meritorious, cannot be raised for the first time on appeal. Id.
Nevertheless, after considering the circumstances of this case, we find that defendant’s statement was freely and voluntarily made after a knowing and intelligent waiver of his constitutional rights. Detective Ikonitski and Detective Boland both testified that defendant indicated that he understood his rights he was waiving. Testimony was presented that defendant was not forced, threatened, or coerced into making a statement. Further, testimony was presented that defendant was not promised anything in exchange for his statement. Detective Ikonitski 11f,testified that defendant fully understood his rights and voluntarily signed the waiver of rights form, agreeing to make a statement. Detective Boland also testified that defendant was advised of his rights and appeared to have understood his rights. Although defendant argues that he “did not really” speak or understand English, the record indicates that defendant was advised of his rights in English and in Spanish through the use of an interpreter. Defendant suggests that he gave his statement and consent prior to being advised of his rights in Spanish. Even if the transcript supported this contention, Detective Boland testified that he and defendant conversed in English and said that there was no need for an interpreter, but only obtained one out of an abundance of caution. The judge’s conclusions on credibility relating to the voluntary nature of the statement are entitled to great weight, and the testimony of the interviewing police officer alone may be sufficient proof that a defendant’s statements were freely and voluntarily given. See Arias-Chavarria, 10-116 at 12, 49 So.3d at 433.[4]
Accordingly, we find that the trial court did not abuse its discretion in denying *250 defendant’s motion to suppress defendant’s statement.

ERROR PATENT DISCUSSION

Defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. The following matter was discovered:
|1(iThe commitment describes the offense as “40:967.F F II POSS/WITD CDS OVER 28 GRAMS — poss. cocaine in excess of 28 to 200 grams.” The transcript reflects that defendant actually pled guilty to possession of 28 to 200 grams of cocaine in violation of LSA-R.S. 40:967(F). The commitment appears confusing in that it suggests that the offense could be possession with intent to distribute. Generally, where there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). We therefore remand this case for correction of the commitment to accurately reflect the offense. See State v. England, 09-746, p. 11 (La.App. 5 Cir. 3/9/10), 38 So.3d 383, 390.
Accordingly, we remand this case to the district court for correction of the commitment for this error. We hereby direct the district court to make the entries in the commitment reflecting the changes and direct the clerk of court to transmit the original of the minute entry to the officer in charge of the institution to which the defendant has been sentenced. See LSA-C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam). We also direct that the minute entry be sent to the Department of Correction’s Legal Department.
For the reasons stated herein, defendant’s conviction and sentence are affirmed. The case is remanded with instructions as set forth herein.

AFFIRMED; CASE REMANDED WITH INSTRUCTIONS

. 338 So.2d 584 (La.1976).

. See Tucker, 626 So.2d at 712-13, for a discussion of factors to consider in determining if an actual stop is "imminent."

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. In the present case, after the suppression hearing, a contempt hearing was conducted. The record reflects that the judge believed that defendant was speaking to someone next to him in court and understanding the person who was speaking English. The judge specifically stated ”[h]e lied and said he wasn’t talking, which is really interesting that we have an interpreter because he doesn’t understand me, but he understands the guy next to him that’s speaking English, and he understood Detective Boland on the scene." Defendant's counsel commented that defendant did speak English, but just not "anywhere near as well as he speaks Spanish.”