STATE OF LOUISIANA

VERSUS

EMILE LONZO

NO. 21-K-490

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

*Susan S. Buchholz*
Susan S. Buchholz
First Deputy, Clerk of Court

October 22, 2021

Susan Buchholz
First Deputy Clerk

**IN RE** EMILE LONZO

---

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE RAYMOND S. STEIB, JR., DIVISION "A", NUMBER 19-3091

---

Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and John J. Lee, Jr.

**WRIT GRANTED**

Defendant, Emile Lonzo, seeks supervisory review of the trial court's May 6, 2021 denial of his motion to suppress evidence and statements. Defendant argues that Jefferson Parish Sheriff's Office detectives did not have reasonable suspicion to justify an April 4, 2019 investigatory traffic stop. He also contends that his signature on the two consent to search forms did not purge the taint of the illegal detention and search. Defendant argues that all evidence and statements that were fruits of the initial illegal detention should be suppressed. For the following reasons, this writ application is granted.

In a bill of information filed May 22, 2019, Defendant was charged with eight counts of possession with intent to distribute eight different types of narcotics. On September 24, 2020, Defendant filed Motion to Suppress Illegally Obtained Tangible Evidence. In his motion, he also moved to suppress statements he made during an investigatory stop.

Detectives Eric Hymel and Carl Marshall of the Jefferson Parish Sheriff's Office (JPSO) testified at the March 11, 2021 hearing on Defendant's motion. Det. Hymel testified that a confidential informant (CI) told him that Emile Lonzo (Defendant) had been selling, in Jefferson Parish, "basically any narcotic he could get his hands on." He further testified that the CI informed him that Defendant lived on the second floor of a white house on Houma Boulevard with an exterior staircase leading to defendant's residence, and that defendant drove a gray-colored Nissan Titan. Detective Hymel also testified that the CI's information had led to narcotics arrests in three other cases. Detective Hymel subsequently corroborated the information provided by the CI. Detective Hymel obtained Defendant's

21-K-490

criminal history from a law enforcement database, DMV information, and a photograph of Defendant. He asserted that he and other detectives went to Houma Boulevard where they found a house with a gray-colored Nissan Titan "pulled in" and noted that the vehicle had a license plate which was registered to defendant at that address.

On April 4, 2019, during surveillance of that address, Detectives Hymel and Marshall observed a black male, later identified as Defendant, exit the second floor of the residence, walk down the exterior staircase, and get into the driver's seat of the Nissan Titan. Prior to stopping Defendant, detectives observed him stop at a Walgreens on Airline Drive, before driving to Hero Drive in Gretna, where a woman "appeared to go to [Defendant's vehicle], retrieve something from the driver, and then go back to her residence" -- something the detectives would consider to be "a suspicious, you know, act, like a drug transaction." Detective Marshall further explained that from his experience and training, "that's usually how hand-to-hand narcotics transactions occur." Detective Hymel testified that the Nissan Titan subsequently left the area, after which they followed it to the 3900 block of Airline Highway in Metairie and conducted an investigatory stop based on what they knew and had observed. During Detective Marshall's testimony, he identified State's Exhibit 1, a consent to search form signed by Defendant, which was admitted into evidence.

Detective Hymel identified State's Exhibit 3, photographs of the search of Defendant's Nissan Titan, which were admitted into evidence. The detectives found bottles containing various pills, which they identified as Suboxone, Oxycodone, Alprazolam, Hydrocodone, and Adderall. Defendant was unable to provide prescriptions for those drugs. Detective Hymel also noted the discovery of a small rock of crack cocaine inside of the vehicle. Detective Hymel placed Defendant under arrest for possession of narcotics and read him his rights. Detective Hymel testified that Defendant understood his rights and waived them, after which he recalled Defendant saying that "he was getting too old for this sh*t and tired of the lifestyle he was living."

After the suppression hearing, the State and the defense filed memoranda. On May 6, 2021, the district court denied Defendant's motion to suppress evidence and statements. In the instant writ application, Defendant argues the CI's information did not provide the detectives with reasonable suspicion to justify the investigatory stop. He also contends that his voluntary consent to the searches did not purge the taint of the illegal detention and searches. Defendant maintains that all evidence and statements that were fruit of the initial illegal detention should be suppressed.

Law enforcement officers are authorized by LSA–C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops which allow officers to stop and interrogate a person reasonably suspected of criminal activity. *State v. Tovar* (La. App. 5 Cir. 10/15/03); 860 So.2d 51, *citing Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The test for "reasonable suspicion" is whether the police officer had sufficient knowledge of the facts and circumstances to justify an infringement upon the individual's right to be free from governmental interference. *See*, *e.g.*, *State v. Melancon*, 03-514 (La. App. 5 Cir. 10/28/03), 860 So.2d 225, 228, *writ denied*, 03-3505 (La. 4/23/04), 870 So.2d 297.

Whether an informant's tip establishes reasonable suspicion to conduct an investigatory stop is determined by analyzing the totality of the circumstances. *See State v. Barker*, 19-223 (La. App. 5 Cir. 12/11/19); 285 So.3d 581, 588, *citing Illinois v. Gates*, 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983); *State v. Nelson*, 02–65 (La. App. 5 Cir. 6/26/02), 822 So.2d 796, 801, *writ denied*, 02–2090 (La. 2/21/03), 837 So.2d 627. The anonymous tip's sufficiency under *Terry* is determined by the reliability of its illegality assertion, not merely its tendency to identify a determinate person. *State v. Francois*, 04-1147 (La. App. 5 Cir. 3/29/05); 900 So.2d 1005, 1010. This Court has held that a tip by an informant can supply reasonable suspicion if it accurately predicts future conduct in sufficient detail to support a reasonable belief that the informant had reliable information regarding the illegal activity. *State v. Murphy*, 14-437 (La. App. 5 Cir. 10/15/14); 181 So.3d 1. The informant's ability to predict the person's future behavior goes to the informant's reliability because it demonstrates inside information and a special familiarity with the person's affairs. *Id.*

Upon review of the testimony given by the detectives at the hearing on the motion to suppress, the tip provided by the, albeit trustworthy and proven, CI did not provide enough predictive information about Defendant's illegal activity to support a finding of reasonable suspicion. One detective testified that the CI made no controlled buys from Defendant. Prior to stopping Defendant, detectives observed him stop at a Walgreens on Airline Drive, before driving to Hero Drive in Gretna, where a woman "appeared to go to [Defendant's vehicle], retrieve something from the driver, and then go back to her residence." Defendant likely used the vehicle for non-illegal activity also. According to the suppression hearing transcript, the detectives did not receive information about Defendant conducting drug transactions at a particular time on April 9, 2019, or about drug activity at or near the Hero Drive address, or about the woman participating in the suspected drug transaction from the CI, or other sources. The CI's tip "failed to predict the specific time period in which defendant would be engaged in illegal activity." *See State v. Robertson*, 97-2960 (La. 10/20/98); 721 So.2d 1268, 1270. Thus, we find the officers did not have reasonable suspicion to stop Defendant at that time.

If the police officer did not have reasonable suspicion to conduct the investigatory stop, the stop is illegal and the evidence seized from it must be suppressed. *State v. McMillan*, 09-415, (La. App. 5 Cir. 12/8/09); 30 So.3d 36, *writ denied,* 09-2831 (La. 6/18/10); 38 So.3d 321, *citing Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

> Consent to search after an illegal detention is nonetheless valid under circumstances showing no exploitation of the illegality. The validity of a search pursuant to a defendant's consent hinges on the voluntariness of the consent, which is a question of fact to be determined by the court under the facts and circumstances of each case. Factors to be considered are whether the officers adequately informed the person that he need not comply with the request, the temporal proximity of the illegality, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct.

*State v. Davis*, 564 So.2d 342, 345 (La. App. 5th Cir. 1990), *writ denied,* 569 So.2d 964 (La. 1990). (Citations omitted.) The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the

preponderance of the evidence clearly favors suppression. *State in Interest of J.H.*, 11-324 (La. App. 5 Cir. 12/28/11); 83 So.3d 1100, 1104.

Defendant signed the consent forms after giving Detective Hymel verbal consent and Detective Marshall reviewed the forms, which included an advisement of the right to refuse the search, with Defendant. Also, both detectives testified that Defendant was not handcuffed at the time he consented to the search. However, the search was in close temporal proximity to the illegal detention, Detective Hymel testified Defendant gave him his driver's license and Defendant's demeanor "became very nervous, [and] shaky" after the detective patted him down to make sure he had no weapons and asked him if he had any illegal narcotics in the vehicle. Detective Hymel also mentioned that his was the lead vehicle during the stop, which indicates additional officers were present, and described coordinating efforts with other detectives "to travel back to the residence and do surveillance on the house" while Detective Marshall completed the consent forms with Defendant. Under the circumstances, we find that Defendant's consent was involuntary and not "the product of a free will [. . .but] the result of an exploitation of the previous illegality." *State v. Raheem*, 464 So.2d 293, 297 (La. 1985).

Considering the foregoing, the writ application is granted. The district court's May 6, 2021 ruling on Defendant's Motion to Suppress Evidence and Statements is reversed.

Gretna, Louisiana, this 22nd day of October, 2021.

**MEJ**
**RAC**

4

STATE OF LOUISIANA                                    NO. 21-K-490

VERSUS                                                FIFTH CIRCUIT

EMILE LONZO                                           COURT OF APPEAL

                                                      STATE OF LOUISIANA


### LEE, J., DISSENTS WITH REASONS

Defendant seeks review of the trial court's denial of his motion to suppress evidence and statements. I believe that the trial court did not abuse its discretion in denying the motion, and therefore, I respectfully dissent from the majority disposition for the following reasons.

On March 11, 2021, Detectives Eric Hymel and Carl Marshall of the Jefferson Parish Sheriff's Office testified at the suppression hearing. Detective Hymel testified that he obtained information from a confidential informant (CI) that Emile Lonzo (defendant) had been selling, in Jefferson Parish, "basically any narcotic he could get his hands on." He further testified that the CI informed him that defendant lived on the second floor of a white house on Houma Boulevard, that the house had an exterior staircase leading to defendant's residence, and that defendant drove a gray-colored Nissan Titan. Detective Hymel testified that they had used the CI previously and that the CI's information had led to narcotics arrests in three other cases.

Detective Hymel explained that he subsequently corroborated the information from the CI by researching his law enforcement database and obtaining a criminal history, DMV information, and a photograph of defendant. He asserted that he and other detectives went to Houma Boulevard where they found a house with a gray-colored Nissan Titan "pulled in." He noted that the vehicle had a license plate which was registered to defendant at that address.

Detective Hymel testified that during surveillance of that address, they observed a black male, later identified as defendant, exit the second floor of the residence, walk down the exterior staircase, and get into the driver's seat of the Nissan Titan. He explained that they followed defendant to an address off of the Westbank Expressway in Gretna. Detective Hymel asserted that a female exited the house for a brief period of time, retrieved something from defendant, then went back to the residence. He explained that what he observed was something they would consider to be "a suspicious, you know, act, like a drug transaction." Detective Mitchell further explained that from his experience and training, "that's usually how hand-to-hand narcotics transactions occur."

Detective Hymel testified that the Nissan Titan subsequently left the area, after which they followed it to the 3900 block of Airline Highway in Metairie and conducted an investigatory stop. Defendant consented to a search of his vehicle and his residence, where narcotics were located and seized. Detective Hymel testified that after he placed defendant under arrest and advised him of his rights, defendant waived them and stated that "he was getting too old for this sh*t and tired of the lifestyle he was living."

21-K-490

An informant's tip may provide reasonable suspicion for an investigatory stop if the tip accurately predicts the suspect's future conduct in sufficient detail to support a reasonable belief that the informant possessed reliable information regarding the suspect's illegal activity. *State v. Francois*, 04-1147 (La. App. 5 Cir. 3/29/05), 900 So.2d 1005, 1010. The tip must also be corroborated by the police. *State v. Holmes*, 08-719 (La. App. 5 Cir. 3/10/09), 10 So.3d 274, 279, *writ denied*, 09-816 (La. 1/8/10), 24 So.3d 857 (citing *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). If an informer's tip accurately predicts the offender's future behavior it gains an additional modicum of reliability. *Id.*

Predictive ability is not always necessary; a non-predictive tip coupled with police corroboration or independent police observation of suspicious activity can provide the police with the requisite reasonable suspicion to detain a suspect. *Francois*, *supra*. An informant's past record for accuracy and reliability is another factor taken into account when determining the reliability of the tip in question. *State v. Austin*, 04-993 (La. App. 5 Cir. 3/1/05), 900 So.2d 867, 879, *writ denied*, 05-830 (La. 11/28/05), 916 So.2d 143.

The United States Supreme Court has applied a "totality of the circumstances approach," which considers an informant's veracity, reliability, and basis of knowledge as highly relevant in determining the value of an informant's tip. *Illinois v. Gates*, 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983); *State v. Nelson*, 02-65 (La. App. 5 Cir. 6/26/02), 822 So.2d 796, 801, *writ denied*, 02-2090 (La. 2/21/03), 837 So.2d 627. "If a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Alabama v. White*, 496 U.S. at 330, 110 S.Ct. at 2416.

Further, a trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. *State v. Lee*, 05-2098 (La. 1/16/08), 976 So.2d 109, 122, *cert. denied*, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008); *State v. Rogers*, 09-13 (La. App. 5 Cir. 6/23/09), 19 So.3d 487, 493, *writ denied*, 09-1688 (La. 4/9/10), 31 So.3d 382.

In the instant case, under the totality of the circumstances, I find that the detective had the requisite reasonable suspicion to conduct the investigatory stop. The CI, who had previously provided information that led to narcotics arrests, provided defendant's name, the location and description of his residence, and a specific description of his vehicle. The CI's tip was sufficiently corroborated by the information gained by the detectives during their law enforcement database research and their surveillance. The detectives were told by the CI that defendant sold narcotics in Jefferson Parish. Afterward, during their surveillance, and based upon their training and experience, the detectives observed what they believed to be defendant involved in a drug transaction in Jefferson Parish. Following the investigatory stop, defendant consented to a search of his vehicle and his residence, where narcotics were located and lawfully seized. He also made statements after being advised of his rights.

Although the majority finds that the CI did not provide enough predictive information about defendant's illegal activity, predictive information is not always necessary. As was stated above, a non-predictive tip coupled with police corroboration or independent police observation of suspicious activity can provide

2

the police with the requisite reasonable suspicion to detain a suspect. *Francois*, *supra*. Here, I find that there was reasonable suspicion for the investigatory stop based on the CI's tip that defendant sold drugs in Jefferson Parish coupled with the detectives' observations of defendant involved in a drug transaction in Jefferson Parish, as well as the CI's past record for accuracy and reliability.

For the foregoing reasons, I respectfully dissent from the majority disposition.

**JJL**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY **10/22/2021** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**21-K-490**

### E-NOTIFIED

24th Judicial District Court (Clerk)
Hon. Raymond S. Steib, Jr. (DISTRICT JUDGE)
Thomas J. Butler (Respondent)

### MAILED

David H. Alfortish (Relator)
Attorney at Law
2801 Kabel Drive
New Orleans, LA 70131

10/22/21

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

David H. Alfortish
Attorney at Law
2801 Kabel Drive
New Orleans, LA 70131
21-K-490                         10-22-21

9590 9402 2434 6249 3627 51

2. Article Number *(Transfer from service label)*

7015 0640 0006 9935 3350

PS Form **3811**, July 2015 PSN 7530-02-000-9053

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*          C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt