WALTER J. ROTHSCHILD, Judge.
|2On October 9, 2009, the Jefferson Parish District Attorney filed a bill of information charging defendant, Tommie C. Molette, with one count of possessing a weapon while in possession of marijuana in violation of LSA-R.S. 14:95(E) (count 2), one count of possession of marijuana with intent to distribute in violation of LSA-R.S. 40:966(A) (count 3), and one count of possession of cocaine in violation of LSA-R.S. 40:967(C) (count 6). On October 13, 2009, defendant was arraigned and pled not guilty to the charges.
On March 3, 2010, the trial court denied defendant’s motion to suppress statement and motion to suppress evidence. Defendant filed a supervisory writ application with this Court seeking review of the trial court’s denial of his motion to suppress evidence. On May 20, 2010; this Court denied relief. State v. Molette, 10-377 (La.App. 5 Cir. 5/20/10) (unpublished writ disposition). The Louisiana Supreme Court subsequently denied defendant’s application for supervisory writs. State ex rel. Molette v. State, 10-1332 (La.11/5/10), 50 So.3d 811.
|sOn November 15, 2010, defendant withdrew his pleas of not guilty and pled guilty to each of the three charges pursuant to State v. Crosby, 338 So.2d 584 (La.1976), thereby reserving his right to seek appellate review of the trial court’s denial of his motion to suppress evidence. That same day, the trial court sentenced defendant to concurrent sentences of 5 years at hard labor on each of the 3 counts, with the sentence on count 2 to be served without benefit of parole, probation, or suspension of sentence. Id. On November 29, 2010, the trial court granted defendant’s motion for appeal.

FACTS

In August 2009, Agent Chris Morris of the Narcotics Division and Major Crimes Task Force of the Jefferson Parish Sheriffs Office was investigating the shooting death of Roshad Smith, which had occurred on August 9, 2009. Morris received information from a confidential informant (“Cl”) that Smith’s assailant was Byron Videau. The informant also advised that Videau could be found at a certain address in a black Pontiac Grand Am, that he sells marijuana, and that he would be in possession of one of the murder weapons. Pursuant to this information, Morris, along *488 with the informant, surveyed the location and observed a black Pontiac Grand Am backed into the driveway with occupants inside the vehicle. A black male, who the informant immediately identified as Vi-deau, then exited the residence and entered the front passenger seat of the Grand Am. At this point, Morris dismissed the informant and he and Detective Raymond Vite established surveillance of the vehicle. It was around 3:30 in the afternoon. For the next fifteen minutes, the car just sat there with nobody entering or exiting the vehicle. During this time, though, the rear passenger side window was rolled down 2 to 3 inches for about a minute and then the front passenger window was rolled down a couple of inches. Morris testified that with the windows rolled down, the | interior cabin of the car became illuminated just enough for him to determine that there appeared to be an occupant in the driver’s seat, one in the front passenger seat, and one in the rear passenger seat. Morris also testified that rolling down the windows is “very common with subjects smoking marijuana in a car. They usually like to leave the windows up to the let the smoke all fill in the car, and get high.” Morris also noted that this occurred in August when the weather is very hot — 90 degrees — and the air conditioner did not appear to be running.
As Morris continued to keep surveillance on the vehicle, another vehicle pulled up and parked next to the Grand Am in a church parking lot which is immediately adjacent to the driveway in which the Grand Am was parked. Morris then observed Videau exit the Grand Am, proceed to the driver’s window of the second vehicle, converse with the driver for a minute or two, open up the back door and lean into the car toward the front for about thirty seconds, and then return to his car where he re-occupied the passenger seat. The second vehicle then left and Morris, believing he had just witnessed a hand-to-hand narcotics transaction, attempted to follow it, but lost the vehicle in heavy traffic. He returned to the scene to reestablish surveillance of the Grand Am and, believing he now had enough to make an investigatory stop, contacted other officers for assistance.
For officer safety, the officers approached the vehicle from three different directions. With weapons drawn, Morris and Detective Vite approached the passenger side of the vehicle while another unit of officers approached the driver’s side. As Morris approached the vehicle, he observed four individuals inside who were all fixated on the police approaching from the driver’s side. Morris observed Videau in the front passenger seat leaning forward while stuffing something under his seat with his right hand. He then observed a semi-automatic pistol jammed between the console and the driver’s seat with only about two inches of the barrel factually stuck between the seat and console, leaving most of the weapon exposed and easily accessible. Morris then commanded the occupants to show their hands. All complied, but as Morris approached closer, he stated that he observed Videau glance at the gun in the console and lower his right hand. Morris then grabbed Videau by the shirt and pulled him to the ground. The other occupants were extracted from the vehicle as well.
A search of the vehicle was conducted for officer safety. In addition to the handgun stuffed between the seat and the console, the search revealed another handgun underneath the front passenger seat where Videau had been sitting, 9 grams of prepackaged marijuana for street sales under the same seat, 30 grams of pre-packaged marijuana for street sales in plain view on the driver’s floorboard, and a plastic bag in plain view in the ashtray containing 0.4 *489 grams of a white powder. Further, Agent Morris testified that he detected the odor of marijuana, but not burnt marijuana, nor did he find a joint or any other evidence of burning marijuana.
After the occupants had been removed from the vehicle, they were all advised of their Miranda[1] rights and handcuffed based on the presence of the gun in plain view. It was determined that the person in the driver’s seat was defendant, that the house in front of which the car was parked was where defendant resided, and that the car was registered in defendant’s family’s name. Defendant was placed under arrest for possession of a stolen firearm, possession of a firearm with a controlled substance, possession of cocaine, and possession of marijuana.
Agent Morris then proceeded to the residence where he advised defendant’s mother of the contraband found in the vehicle and sought consent to search her residence. He presented her with a consent to search form, which she executed. | r,Agent Morris presented the same form to defendant, who also signed it and stated that he had a bedroom in the house. A search of defendant’s bedroom was then conducted which revealed over 100 grams of marijuana and T-shirts and photographs with gang-related images.
In his sole assignment of error, defendant argues that the trial court erred in denying the motion to suppress the evidence because the police did not have probable cause to make an arrest, nor a reasonable suspicion to make a stop. Conversely, the State argues that the police did have a reasonable suspicion to approach the vehicle and that once contraband was observed in plain view; they had probable cause to make an arrest.
An investigatory stop may be conducted when a police officer has a reasonable articulable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 82-2061, 82-2120 (La.11/28/83), 441 So.2d 1195, 1198, cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The Terry standard, as codified in La. C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. State v. Dickerson, 10-672, p. 5 (La.App. 5 Cir. 4/26/11), 65 So.3d 172, 176.
Reasonable suspicion is something less than probable cause to arrest, though it is more than an officer’s mere unparticularized suspicion or hunch of criminal activity. State v. Massey, 03-1166 (La.App. 5 Cir. 1/27/04), 866 So.2d 965, 968. State v. Williams, 10-51, p. 6 (La.App. 5 Cir. 7/27/10), 47 So.3d 467, 471, writ denied, 10-2083 (La.2/18/11), 57 So.3d 330. In making the determination of whether a police officer had reasonable suspicion, a reviewing court must take into consideration the totality of the circumstances and give deference to the inferences |7and deductions of a trained police officer that might elude an untrained person. State v. Burns, 04-175, p. 5 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1076. Factors that may support a reasonable suspicion for an investigatory stop include an officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidence of crimes. State v. Martin, 99-123, p. 6 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 102.
Whether an informant’s tip creates a reasonable suspicion necessary to *490 conduct an investigatory stop is determined under the totality of the circumstances. State v. Francois, 04-1147, p. 6 (La.App. 5 Cir. 3/29/05), 900 So.2d 1005, 1010. This Court has held that a tip by an informant can supply reasonable suspicion if it accurately predicts future conduct in sufficient detail to support a reasonable belief that the informant had reliable information regarding the illegal activity. State v. Melancon, 03-514 (La.App. 5 Cir. 10/28/03), 860 So.2d 225, 229, writ denied, 03-3503 (La.4/23/04), 870 So.2d 297. The informant’s ability to predict the person’s future behavior goes to the informant’s reliability because it demonstrates inside information and a special familiarity with the person’s affairs. Id. In addition, the tip must be corroborated. Francois, supra.
In the instant case, the confidential informant advised when and where Byron Videau would be found, the type of car in which he would be found, and that he would be in possession of a weapon and marijuana. The surveillance corroborated the time, place, and car details; and the subsequent arrests and search confirmed the presence of weapons and marijuana. Additionally, the surveillance revealed the suspicious activity of the occupants sitting in the car with the windows rolled up on a hot August day and periodically lowering the windows only a few inches, which, based on his six and one half years of experience as a narcotics officer, Agent Morris found to be indicative of smoking marijuana. Further, Agent |sMorris observed what experience told him was a hand-to-hand narcotics transaction.
We find that the tip from the confidential informant in the instant case contained predictive information from which the officers could reasonably determine that the informant had “inside information” or a “special familiarity” with defendant’s affairs. We conclude that this corroborated information from the Cl, in conjunction with Agent Morris’s observations on the scene, were sufficient to provide the officers with the requisite reasonable suspicion to justify the officers’ approach of the parked vehicle.
Furthermore, we find that the police were justified in approaching the vehicle with their guns drawn in light of the facts that they had been informed that one of the occupants was involved in a murder, that he would be armed, that he sells marijuana, and this Court’s recognition that guns, drugs, and violence often go together.[2] See United States v. Hensley, 469 U.S. 221, 235, 105 S.Ct. 675, 684, 83 L.Ed.2d 604 (1985) (finding the use of a drawn weapon was permissible in an investigatory stop when the suspects had been reported to be armed and dangerous); State v. Broussard, 00-3230 (La.5/24/02), 816 So.2d 1284, 1284 (investigatory stops may be accompanied by features normally associated with an arrest, e.g., use of drawn weapons and handcuffs).
Having determined that the officers had a reasonable suspicion to justify their approach with weapons drawn, the next issue is whether the facts were sufficient to elevate the officers’ reasonable suspicion to probable cause in order to justify the arrests of the occupants and the search of the vehicle.
IgA warrantless arrest must be based on probable cause. Probable cause to arrest exists when the facts and circumstances within an officer’s knowledge, and *491 of which he has reasonable trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed or is committing a crime. State v. Bazley, 09-358, p. 28 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 25, writ denied, 11-0282 (La.6/7/11), 63 So.3d 1039.
Prior to even approaching the vehicle, Agent Morris had already corroborated some of the information provided by the Cl, had observed the suspicious activity of the occupants sitting in the car with the windows rolled up on a hot August day, and had observed what he believed to be a hand-to-hand narcotics transaction. As he neared the vehicle, Agent Morris then observed one of the occupants stuffing something under his seat and a semi-automatic pistol jammed between the console and the driver’s seat. Once he observed the gun in plain view in the vehicle, Agent Morris’s reasonable suspicion of criminal activity ripened into probable cause that a crime had been or was being committed. See, State v. Hunt, 09-1589, p. 10 (La.12/1/09), 25 So.3d 746, 754.
After extracting the occupants from the vehicle and detaining them for officer safety, Agent Morris detected the odor of marijuana, and observed in plain view pre-packaged marijuana on the driver’s floorboard and a plastic bag of cocaine in the ashtray. We find that these pieces of evidence were properly seized pursuant to the plain view doctrine, which provides that police may seize evidence when there is prior justification for an intrusion into the protected area, and it is immediately apparent, without close inspection, that the items seized are evidence or contraband. State v. Tate, 09-619, p. 12 (La.App. 5 Cir. 2/9/10), 33 So.3d 292, 300-01.
IiqAs to the second gun and marijuana found under the front passenger seat, we find that these pieces, of evidence were lawfully seized pursuant to the automobile exception. This Court has recognized that the Fourth Amendment allows police to search a vehicle absent a warrant if a car is readily mobile and probable cause exists to believe it contains contraband. State v. Francois, 04-1147, p. 11 (La.App. 5 Cir. 3/29/05), 900 So.2d 1005, 1013; accord State v. Long, 03-2592, p. 10 (La.9/9/04), 884 So.2d 1176, 1183 n. 6, cert. denied, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005).
Here, defendant’s vehicle was readily mobile, as it was backed into the driveway, and the officers had probable cause to believe contraband was contained inside because they had already discovered other contraband in plain view in the vehicle. Thus, we find that the search of the vehicle was justified under the automobile exception and the evidence seized as a result was likewise legally obtained.
As to the marijuana and other items seized from defendant’s bedroom, we also find that these were lawfully seized. Consent to search is one of the recognized exceptions to the warrant requirement, where the consent is freely and voluntarily given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected. State v. Nicholas, 06-903, p. 8 (La.App. 5 Cir. 4/24/07), 958 So.2d 682, 687. Consent may be given orally or in writing. State v. Gomez, 06-417, p. 7 (La.App. 5 Cir. 11/28/06), 947 So.2d 81, 86. The State has the burden of proving the consent was given freely and voluntarily when it relies on consent to justify a warrantless search. Nicholas, 06-903 at 8, 958 So.2d at 688. Voluntariness is a question of fact to be determined by the trier-of-fact under the totality of the circumstances. Id.
*492 |T1In the instant case, both defendant and his mother voluntarily signed a consent to search form, consenting to a search of the residence. As a result, we find that the contraband in defendant’s bedroom was lawfully seized.
It is well-settled that if evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Williams, 10-51 at p. 5, 47 So.3d at 471. Because the evidence in this case was obtained as a result of a lawful search and seizure, we determine that it was properly admitted at trial. Therefore, since the trial court is afforded great discretion when ruling on a motion to suppress and its ruling will not be disturbed absent an abuse of its discretion, State v. Rogers, 09-13, p. 9 (La.App. 5 Cir. 6/23/09), 19 So.3d 487, 493, writ denied, 09-1688 (La.4/9/10), 31 So.3d 382 (citations omitted), we find that the trial judge did not abuse his discretion in denying defendant’s motion to suppress the evidence. This assignment lacks merit.

ERROR PATENT DISCUSSION

The defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990) regardless of whether defendant makes such a request. Upon review of the record, we have discovered no error patent which requires corrective action.

DECREE

Accordingly, for the reasons assigned herein, the conviction and sentence of defendant Tommy Molette, are affirmed.

AFFIRMED

. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

. See State v. Thomas, 08-521, p. 9 (La.App. 5 Cir. 1/27/09), 8 So.3d 646, 653, writ denied, 09-0391 (La.12/18/09), 23 So.3d 928.