WINDHORST, J.
*460 Defendant/relator, Timothy R. Farber, seeks review of the trial court's denial of his motion to suppress evidence and conviction and sentence for possession of less than 14 grams of marijuana, a misdemeanor offense. For the reasons that follow, we deny defendant's writ application and affirm his conviction and sentence.
Procedural History
Defendant was charged by bill of information filed July 25, 2017, with possession of less than 14 grams of marijuana in violation of La. R.S. 40:966 C, a misdemeanor offense. On December 7, 2017, the trial court simultaneously heard defendant's motion to suppress evidence and trial on the merits of the charged offense.[1] At the conclusion of the motion hearing and trial on December 8, 2017, the trial court denied defendant's motion to suppress and found him guilty as charged.
On May 17, 2018, the trial court sentenced defendant to fifteen days in the Jefferson Parish Correctional Center. The trial court suspended imposition of defendant's sentence and ordered him to be placed on twelve months active probation to commence on July 26, 2018. Defendant filed a written notice of intent to apply for a writ of review, which was granted by the trial court. In this writ application, defendant seeks review of the trial court's December 8, 2017 denial of his motion to suppress evidence and the trial court's finding that he was guilty of the misdemeanor offense of possession of less than 14 grams of marijuana.
Facts
At the motion hearing and trial, Detective Blaine Howard of the Jefferson Parish Sheriff's Office, Project STAR division, testified that he and his partner, Detective Daniel Lassus, were on pro-active patrol of a high crime area in the 4000 block of Jefferson Highway on March 11, 2017.[2] Approximately 6:40 P.M., he observed defendant standing in front of a library which was closed at the time, using his cell phone. Detective Howard testified that his suspicion was heightened, so they obtained a position of surveillance of defendant, which he believed was "consistent with someone that could possibly be involved in a criminal activity." Detective Howard testified that after approximately five minutes of cell phone use he observed defendant cross Jefferson Highway and enter a Rite Aid. Ten minutes later, defendant exited the Rite Aid with a bag and a bucket in his hand and began walking eastbound on Jefferson Highway.
Detective Howard testified that they were dressed in civilian clothes and had service weapons, badges, and ballistic vests bearing the word "Sheriff," which clearly identified them as law enforcement officers when they approached defendant to "speak" with him. After identifying themselves as police officers, the detectives asked defendant about his presence at the library. Defendant informed them that he was using the library's Wi-Fi while waiting for a ride from a friend. For officer safety, the detectives inquired as to whether defendant had any weapons or narcotics *461 on his person. Defendant replied that while he did not have any weapons, "he uses marijuana." Detective Howard then asked whether defendant had any marijuana on his person, and defendant responded that he did not have any marijuana on him but he had some in his hotel room.
Based upon his admission, defendant was detained, advised of his Miranda [3] rights, and transported to his hotel, The LaBella, on Jefferson Highway. Detective Howard stated that once they were at the hotel, defendant was presented with, reviewed, and signed a consent to search form providing consent to search his hotel room.[4] The detectives entered the hotel room with a key provided by defendant and seized 8.8 grams of marijuana from inside a nightstand after defendant informed them of its location.[5] Defendant was issued a misdemeanor summons for possession of marijuana in lieu of his arrest.
Defense counsel argued the marijuana should be suppressed because the detectives did not have reasonable suspicion or probable cause to stop defendant, and thus, the evidence seized from his hotel room constituted fruit of the poisonous tree. Defense counsel further argued that if the detectives believed defendant was involved in criminal activity, they should have stopped defendant while he was standing in front of the library.
The State argued that this case was analogous to those cases involving consensual encounters, citing State v. Martin, 11-0082 (La. 10/25/11), 79 So.3d 951, because the detectives merely approached defendant to ask him what he was doing outside of a closed library and, for their safety, whether he had any weapons or narcotics on him.
The trial court denied defendant's motion to suppress evidence and found him guilty as charged. Defendant was sentenced and this writ application followed.
Discussion
In his first assignment of error, defendant asserts that Detective Howard lacked sufficient reasonable suspicion for the initial investigatory stop, and therefore everything that occurred after the illegal stop is fruit of the poisonous tree and should have been suppressed. Defendant argues that standing in front of a closed library and using a cell phone is not a "particularized and objective basis for suspecting that he was committing or had committed a criminal offense," and therefore insufficient to support a finding of reasonable suspicion. Defendant further contends the detectives went beyond the scope of a Terry [6] stop when they questioned him regarding his possession of weapons and illegal narcotics, and as such, his statement regarding the marijuana in his hotel room was given involuntarily.[7]
*462 A trial court's denial of a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Bellow, 07-824 (La. App. 5 Cir. 3/11/08), 982 So.2d 826, 829. In a hearing on a motion to suppress, the State has the burden to establish the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703 D; State v. Lewis, 12-902 (La. App. 5 Cir. 6/27/13), 121 So.3d 128, writ denied, 13-1926 (La. 4/17/14), 138 So.3d 618.
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect individuals against unreasonable searches and seizures. State v. Nelson, 02-65 (La. App. 5 Cir. 6/26/02), 822 So.2d 796, 800, writ denied, 02-2090 (La. 2/21/03), 837 So.2d 627 ; State v. Snavely, 99-1223 (La. App. 5 Cir. 4/12/00), 759 So.2d 950, 956, writ denied, 00-1439 (La. 2/16/01), 785 So.2d 840. In an effort to discourage police misconduct in violation of these standards, evidence recovered as a result of an unconstitutional search and seizure may not be used in a resulting prosecution against the citizen. Nelson, 822 So.2d at 800 ; State v. Duckett, 99-314 (La. App. 5 Cir. 7/27/99), 740 So.2d 227, 230.
An investigatory stop, however, may be conducted when a police officer has a reasonable, articulable suspicion of criminal activity. State v. Molette, 11-384 (La. App. 5 Cir. 11/29/11), 79 So.3d 484, 489 ; State v. Belton, 82-2061, 82-2120 (La. 11/28/83), 441 So.2d 1195, 1198, cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The Terry standard, as codified in La. C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place who they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. Molette, 79 So.3d at 489.
Reasonable suspicion is something less than probable cause to arrest, though it is more than an officer's mere unparticularized suspicion or hunch of criminal activity. Molette, supra ; State v. Massey, 03-1166 (La. App. 5 Cir. 1/27/04), 866 So.2d 965, 968. In making the determination of whether a police officer had reasonable suspicion, a reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person. Molette, supra. Factors that may support reasonable suspicion for an investigatory stop include an officer's experience, his knowledge of recent criminal patterns, and his knowledge of an area's frequent incidence of crimes. Molette, supra. However, an individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy it entails and consider the totality of the circumstances in determining whether reasonable suspicion exists. State v. Marzett, 09-1080 (La. App. 4 Cir. 6/9/10), 40 So.3d 1204, 1208.
"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." Adams v. Williams, 407 U.S. 143, 145-46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). On the contrary, as the Supreme Court explained in Adams, the Terry case "recognizes that it may be *463 the essence of good police work to adopt an intermediate response." Id."A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Id.
Although reasonable suspicion is required for a police officer to stop an individual, it is not required every time an officer approaches a citizen in a public place. Police officers possess the same right as any citizen to approach an individual and ask a few questions. State v. Jackson, 00-3083 (La. 3/15/02), 824 So.2d 1124, 1126 (per curiam ), citing Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). A police officer's action of merely approaching an individual does not implicate the protections of the Fourth Amendment. Jackson, 824 So.2d at 1126.
For purposes of the Fourth Amendment, a person is "seized" when that person submits to the police show of authority or is physically contacted by the police. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) ; State v. Sylvester, 01-0607 (La. 9/20/02), 826 So.2d 1106, 1108. Under the Louisiana Constitution, a person is also "seized" when an actual stop is imminent. An actual stop is imminent "when the police come upon an individual with such force, that regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain [to occur]." Sylvester, supra. Factors to consider in determining whether an actual stop is imminent are the proximity of the police in relation to the defendant at the outset of the encounter, whether the individual has been surrounded by the police, whether the police approached the individual with their weapons drawn, whether the police and/or the individual are on foot or in motorized vehicles during the encounter, the location and characteristics of the area where the encounter takes place, and the number of police officers involved in the encounter. State v. Stanfield, 05-839 (La. App. 5 Cir. 3/14/06), 925 So.2d 710, 716.
In its reasons for denying the motion to suppress, the trial court found that Detective Howard possessed reasonable suspicion to believe that a crime had been, was being, or was about to be committed, based upon articulable facts. The detectives testified that they were on pro-active patrol in a high crime neighborhood and defendant was observed standing in front of a closed library for approximately five minutes. We find the trial court's ruling denying defendant's motion to suppress was correct, but not for the grounds asserted by the trial court.
It is not clear based on the record whether Detective Howard possessed the requisite reasonable suspicion to conduct an investigatory stop of defendant. However, Detective Howard had the right to engage defendant in conversation without reasonable grounds to believe that he committed a crime. Detective Howard testified that he and his partner were in their vehicle on pro-active patrol of a high crime area when they observed defendant standing in front of a closed library using his cell phone for five minutes. The officers then observed defendant cross the street, enter a Rite Aid, and later exit the store with some purchased items. At that time the detectives decided to "speak" with defendant about his presence at the library. Detective Howard testified that they pulled up to defendant and exited their vehicle. They were clearly identified as law enforcement wearing civilian clothes by their service weapons, badges, and ballistic vests with the word "Sheriff" written on *464 them. Detective Howard inquired as to defendant's presence at the library and, for officer safety, whether defendant had any weapons or narcotics on his person. In response, defendant provided an incriminating statement regarding marijuana at his hotel room, was advised of his Miranda rights, handcuffed, and transported back to his hotel where the detectives conducted a search of his room pursuant to his written consent. "The proposition that police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions ... is by no means novel; it has been endorsed by the Court any number of times." Sylvester, 826 So.2d at 1108 ; See State v. Thomas, 98-1024 (La. App. 5 Cir. 3/10/99), 734 So.2d 39 (this Court found there was no "seizure" within the meaning of the Fourth Amendment when officers on patrol in high crime and narcotic traffic area first approached the defendant standing on the sidewalk after recognizing defendant as a person who had been frequently interviewed and arrested); State v. Turner, 08-1188 (La. App. 5 Cir. 5/12/09), 13 So.3d 695, writ denied, 09-2100 (La. 8/18/10), 42 So.3d 400 (this Court found the defendant was not "seized" for purposes of the Fourth Amendment when officer approached defendant, who was standing with several males in a parking lot, to conduct a field interview); Martin, supra (nothing in the conduct of the police officer decisively changed the consensual nature of the officer's brief encounter with the defendant into a detention; defendant voluntarily answered a potentially incriminating question).
Based upon the facts adduced at trial, we find the detectives had the right to engage defendant in a conversation about his presence at the library and that such discussion did not constitute a "seizure." Upon approaching defendant, Detective Howard did not indicate to him that a detention was imminent. While Detective Howard and his partner approached defendant in their vehicle and then exited to speak with him, there was no testimony presented that their guns were drawn, that he was surrounded by police, or that a frisk or pat-down was conducted. There is nothing in the record to indicate that Detective Howard ordered defendant to submit to his authority or ever attempted to assert any official authority over defendant by ordering or signaling him to stop. The encounter between the detectives and defendant was brief and defendant was only physically restrained after he provided a voluntary answer to a potentially incriminating statement. We therefore find defendant was never "seized" for purposes of the Fourth Amendment during the initial encounter that occurred in this case. Accordingly, we find the trial court did not err in denying defendant's motion to suppress and finding him guilty as charged.
In his second assignment of error, defendant argues the marijuana found in his hotel room after the alleged unlawful stop and the statements made prior to his arrest constitute "fruits of the poisonous tree" and should have been suppressed. He contends that Detective Howard conducted an illegal search of his hotel room where the consent to search form was signed after the search of his hotel room as evidenced by the documentary evidence in this case. Accordingly, defendant argues Detective Howard's contradictory testimony should be disregarded in favor of the documentary evidence in this case.
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well delineated exceptions.
*465 State v. Stone, 94-155 (La. App. 5 Cir. 7/26/94), 641 So.2d 652, 655, writ denied, 95-0631 (La. 1/6/97), 685 So.2d 129.
Consent to search constitutes one of the exceptions to the probable cause and warrant requirements of the Fourth Amendment when it is freely and voluntarily given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected. State v. Nicholas, 06-903 (La. App. 5 Cir. 4/24/07), 958 So.2d 682, 687. When the State relies on consent to justify a warrantless search, it has the burden of proving the consent was freely and voluntarily given. State v. Enclade, 03-353 (La. App. 5 Cir. 9/16/03), 858 So.2d 8, 15. Voluntariness of a defendant's consent to search is a question of fact to be determined by the trial judge from a review of the totality of the circumstances. Id. The factual determinations of the trial court on the issue of voluntariness of a consent to search are entitled to great weight on appellate review. Id. The trial court's determination as to the credibility of witnesses is to be accorded great weight on appeal. Id.
Because the stop was lawful, we find the seizure of the marijuana was legally obtained per a validly executed consent to search. During a valid stop, defendant, who was not subject to a custodial interrogation,[8] was asked by Detective Howard regarding his presence at the library, to which defendant stated he was using the library's Wi-Fi while waiting for a ride. Detective Howard testified that for officer safety defendant was asked whether he had any weapons or narcotics on his person. Defendant stated that he used marijuana and had it in his hotel room. Based on defendant's inculpatory statement, Detective Howard read defendant his Miranda rights. Defendant was presented with, reviewed, and signed a consent to search form to search his hotel room. While the record is unclear as to whether defendant's consent to search was obtained at the scene of the stop or at the scene of the hotel, it is consistent in that consent was obtained prior to a search of the hotel room, which the detectives gained entry to with the key provided by defendant. In explaining the time discrepancies on the consent to search form (7:10 P.M.) and the misdemeanor summons (7:00 P.M.), Detective Howard testified that the time written on the summons was the time of the stop and not the time defendant signed the summons which was issued to him after the search of the hotel room and the seizure of the marijuana.
In denying defendant's motion to suppress, the trial court found the time reflected on the summons was the time of the initial stop, not the time the summons was issued/signed. The court further found that defendant was not forced, threatened, or promised anything in exchange for the consent to search. Because a trial court's determination as to the credibility of a witness on a motion to suppress is accorded great weight on appeal unless unsupported by the evidence, we find no error in the trial court's denial of defendant's motion to suppress.
Errors Patent
A complete record of this case was not provided. Thus, a review for errors patent *466 according to the mandates of La. C.Cr.P. art. 920 ; State v. Oliveaux, 312 So.2d 337 (La. 1975) ; and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990) was conducted only as to the information provided in this writ application. No errors patent were discovered.
Conclusion
Considering the evidence and applicable law, we affirm defendant's conviction and sentence. Accordingly, this writ application is denied.
WRIT DENIED; CONVICTION AND SENTENCE AFFIRMED

Defendant's written motion to suppress evidence is not contained in the writ application.

Detective Howard testified that he and other investigators assigned to the Project STAR division have made and/or participated in numerous narcotics related arrests in the area.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

On cross-examination, Detective Howard testified that defendant was presented with and signed the consent to search form prior to his relocation to the hotel.

The parties stipulated that if Pamela Williams Cyprien, expert in the analysis of controlled dangerous substances, were called to testify she would testify that the evidence seized in this matter was marijuana.

Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Defendant did not present this argument to the trial court, and has therefore waived this basis for suppression. A new basis for an objection may not be urged for the first time on appeal. State v. Butler, 12-2359 (La. 5/17/13), 117 So.3d 87, 89, cert. denied, 572 U.S. 1064, 134 S.Ct. 1879, 188 L.Ed.2d 918 (2014) ; State v. Enclard, 03-283 (La. App. 5 Cir. 6/19/03), 850 So.2d 845, 853. There is no evidence that a motion to suppress statement was ever filed in this case.

Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement or promises. La. R.S. 15:451 ; State v. Mollette, 08-138 (La. App. 5 Cir. 11/25/08), 2 So.3d 461, 467, writ denied, 09-155 (La. 10/16/09), 19 So.3d 472.